UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL SMITH,

        Plaintiff,   **MEMORANDUM OF DECISION
              AND ORDER**
              04-CV-3843 (DRH) (ETB)

  - against -

FORSTER AND GARBUS D/B/A
PROFESSIONAL CREDIT SERVICES, INC.,

        Defendant.
----------------------------------------------------------X
**A P P E A R A N C E S :**

**MICHAEL SMITH, PLAINTIFF PRO SE**
104-11 210th Street
Queens Village, New York 11429

**FORSTER & GARBUS**
Attorneys for Defendant
500 Bi-Country Boulevard
Post Office Box 9030
Farmingdale, New York 11735-9030
By: Robert A. Meyerson, Esq.

**HURLEY, District Judge:**

    Plaintiff Michael Smith ("Plaintiff") brings the present suit against his former employer, Forster & Garbus, incorrectly identified in the Complaint as Forster & Garbus d/b/a Professional Credit Services, Inc. ("Defendant"), alleging that he was discriminated against on the basis of his religion, pursuant to 42 U.S.C. §§ 2000e et seq. ("Title VII") and the New York State Human Rights Law ("NYSHRL"). Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendant's motion is granted and this case is dismissed in its entirety.[1]

---

[1] Defendant timely served Plaintiff with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" pursuant to Local Rule 56.2.

## BACKGROUND

The parties' papers are hardly a model of clarity. In support of its motion, Defendant submitted several affidavits and exhibits but did not submit a Local Rule 56.1 statement as required. Local Rule 56.1(a) provides that, upon a motion for summary judgment:

> [T]here shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a). In addition, subsection (b) provides that: "The papers opposing a motion for summary judgment shall include a separate, short concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* 56.1(b). Although a district court may deny a motion for summary judgment for failing to comply with this rule, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and "may opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 63, 73 (2d Cir. 2001) (internal citations and quotation marks omitted).

Here, neither party has submitted a Rule 56.1 statement.[2] Nonetheless, Defendant has submitted five affidavits, the deposition testimony of Plaintiff, and several documentary exhibits. In addition, both sides have had appropriate time to fully brief the motion. Accordingly, in the exercise of my discretion, the Court will proceed to make a determination based upon the current record.

---

[2] This is particularly curious with regard to Defendant as its Local Rule 56.2 Notice to Pro Se Litigant explicitly references the need to include such a statement. (Def.'s Local Rule 56.2 Notice.)

## I. *Plaintiff's Evidence*

In opposition to the present motion, Plaintiff submits a sworn and signed opposition brief. In addition, attached as exhibits to Defendant's motion papers are the Complaint and Plaintiff's deposition testimony. After a review of all three documents, the Court briefly summarizes Plaintiff's position below.

Plaintiff claims that he is a Seventh Day Adventist and that his religious practices prohibit him from working on Saturdays. (Pl.'s Opp'n at 1.) Plaintiff was employed by Defendant for approximately three weeks from March 2004 to April 2004.

Plaintiff first learned that Defendant was looking to hire a debt collector in March 2004 when he saw an advertisement in the newspaper. (Pl.'s Dep., dated June 6, 2005 ("Pl.'s Dep."), at 24.) On March 3, 2004, he interviewed with Daria Campisi ("Campisi"), an employee of Defendant. (*Id.* at 27, 32.) Plaintiff claims that Campisi told him that the position required Plaintiff to work two Saturdays per month. (*Id.* at 28; Pl.'s Opp'n at un-numbered pages 5-6, 30; Compl. ¶ 8.) He also contends that Campisi "didn't explain that much because [he] wasn't hired" immediately upon the conclusion of the interview and that he "didn't get an actual schedule as to what particular days [he] would work." (Pl.'s Dep. at 28-29.) Plaintiff claims that he told Campisi that he wanted to work Saturday evenings because of church (Pl.'s Opp'n at un-numbered page 7; Pl.'s Dep. at 29, 41) and that Campisi told him that the company was very strict regarding employees working their scheduled days and hours (*id.* at 30; Pl.'s Opp'n at un-numbered page 7).

Campisi called Plaintiff later that day and offered him the job (Pl.'s Dep. at 32) which he began on March 8, 2004 (*id.* at 37). During this phone conversation, there was no

discussion regarding Plaintiff's schedule and Plaintiff did not mention his inability to work on Saturdays. (*Id.* at 33, 42.) The first person Plaintiff spoke to on his first day at work was Joyce Ross ("Ross"), Defendant's Human Resources Manager, who told him to go into a training room with Don Megna, the Training Supervisor, and other trainees. (*Id.* at 37-38.) Plaintiff had no discussions with Ross about working on Saturdays. (*Id.* at 42.)

Plaintiff claims that on March 10, 2004, Megna told all of the trainees that they were hired to work every Saturday morning. (*Id.* at 47; Pl.'s Opp'n at un-numbered page 8.) Plaintiff responded that he was supposed to work Saturday evenings instead of Saturday mornings. (Pl.'s Dep. at 48.) Megna allegedly told Plaintiff that he had no knowledge of any employee who would be able to work on a day other than a Saturday morning and that Plaintiff would have to speak with Betty Hill, Campisi, or somebody else. (*Id.* at 50, 64.) Plaintiff further claims that Megna made a notation on Plaintiff's employment application but that Plaintiff does not know exactly what he wrote. (*Id.* at 65; Pl.'s Opp'n at un-numbered page 7.) Plaintiff claims that he spoke with Megna again later that same day and that Megna told him that Plaintiff had agreed to work Saturday mornings. (Pl.'s Dep. at 52.) Megna then told Plaintiff to speak with Betty Hill, a collections supervisor. (Compl. ¶ FIFTH.)

On March 11, 2004, Plaintiff spoke with Hill (Pl.'s Dep. at 65) who told Plaintiff that it was mandatory that collectors work on Saturdays (*id.* at 66). However, when Plaintiff told her that he opposed this practice, Hill asked if Plaintiff could work at least one Saturday per month. (Pl.'s Opp'n at un-numbered page 10; Compl. ¶ SIXTH.). She further told Plaintiff that he "would have to tell the other supervisors that [he] won't work . . . Saturday morning." (Pl.'s Dep. at 67.)

-4-

After completing his two-week training, Plaintiff was assigned to the "Dialer Unit" on March 22, 2004; his supervisor was Paul Ketchens ("Ketchens"). (*Id.* at 53-55.) Plaintiff did not know what hours he would be working. (*Id.* at 57.) He asked Ketchens if he could work "the evenings" and Ketchens allegedly responded that he could not. (*Id.* at 59.) During his deposition, Plaintiff explained that although no one told him he could work Saturday evenings, he just assumed that would be the case because Defendant had a policy of mandatory Saturday shifts and evening shifts would be the shifts he "would want." (*Id.* at 48-49.) When asked during his deposition what hours he worked during the week of March 22nd, Plaintiff responded that he worked from "8 to 5." (*Id.*) No where in Plaintiff's deposition does he state that he was asked to work on a particular Saturday.

Plaintiff states that on April 1, 2004, DebraAnn DeMott ("DeMott") told him he was being fired because "he wrote obscene language on the computer and throughout the computer." (*Id.* at 89; *see also id.* at 92.) He also claims that he told DeMott that he denied putting any obscene language on the computer. (*Id.* at 93.)

Plaintiff contends that Defendant terminated his employment because "he simply was not contributing any support whatsoever to the Mandatory Saturday projects." (*Id.* at un-numbered page 33.) In support of his claim that Defendant has a mandatory Saturday policy, Plaintiff relies on the alleged statements of Hill and Campisi to that effect. In addition, Plaintiff testified that Defendant admitted that it had a policy of requiring collectors to work on Saturdays in its answer filed before the NYSDHR (Pl.'s Dep. at 96); however, this pleading is not part of the present record. In any event, in its Answer filed in this action, Defendant "admits that Campisi told . . . [P]laintiff that the collector position required the collectors to work two

Saturdays a month but that information was communicated before the plaintiff notified . . . [D]efendant of his Sabbath observance." (Answer ¶ 9.) In addition, while Defendant admits that its "usual practice [is] to have their collectors work two Saturdays each month," it denies that it "does not offer full time collectors positions that do not require them to work Saturdays. (*Id.* ¶ 10.)

## II.     Defendant's Evidence

### A.     Ketchens Affidavit

Defendant proffers the affidavit of Ketchens, supervisor of Defendant's Dialer Unit, where the initial attempts to contact debtors are made. (Aff. of Paul Ketchens, dated Aug. 17, 2005, ¶¶ 2-3.) Ketchens states that it is Defendant's standard practice to assign new collectors to the Dialer Unit during the "probationary period." (*Id.* ¶ 4.)

Upon completion of his two week training program, Plaintiff was assigned to the Dialer Unit. (*Id.* ¶ 5.) One of Ketchens' responsibilities as collection supervisor is to review the files being handled by the collectors in his department. (*Id.* ¶ 6.) During a routine review of the computer files Plaintiff was working in, Ketchens noticed that one of Plaintiff's files indicated that a debtor had told Plaintiff to "go fuck [him]self." (*Id.* ¶ 7 and Ex. F.) A hard copy of the file is attached to Defendant's motion papers. (*Id.* Ex. F.) Ketchens was "horrified to see that [Plaintiff] had placed profanity in [Defendant's] computer notes" as Defendant's "clients as well as other employees can review these notes." (*Id.* ¶ 8.) He states that "[t]his showed a lack of common sense and poor judgment." (*Id.*) He discussed Plaintiff's actions with Campisi and DeMott and they agreed "it was necessary to terminate [Plaintiff's] employment immediately." (*Id.* ¶ 9.)

### B. DeMott Affidavit

Defendant also proffers DeMott's affidavit wherein she indicates that she met with Ketchens regarding Plaintiff's misconduct and that "a decision was made that [Plaintiff's] misconduct was so egregious that [he] had to be terminated immediately." (Aff. of DeMott, dated Aug. 17, 2005, ¶ 5.) She also states that although terminations are normally handled by Ross, because Ross was not in the office that day, she met with Plaintiff and Ketchens and informed Plaintiff "that he was being terminated for placing profanity in the computer notes." (*Id.* ¶ 7.) Attached as an exhibit is a "termination form" signed by DeMott, dated April 1, 2004, which indicates that Smith was being discharged because he "wrote foul language in the legal notes (BAD). Explained it was against Company policy and I had to let him go." (Ex. F.)

### C. Ross Affidavit

Defendant submits the affidavit of Ross, its Human Resources Manager, who states that during her three years working for Defendant, which includes the three week period Plaintiff was employed, Defendant never had a policy which required collectors to work two Saturdays per month. (Aff. of Joyce Ross, dated Aug. 17, 2005, ¶ 6.) She does concede, however, that "Forster and Garbus *prefers* to have collectors work two Saturday mornings each month. However, Forster and Garbus has always been flexible with employee scheduling to accommodate good collectors." (*Id.* ¶ 4 (emphasis added).) Attached to her affidavit is a sample employee schedule showing that out of approximately 90 employees, 14 collectors do not work on Saturdays. (*Id.* Ex. I.) The rest of the collectors work either one Saturday per month, two Saturdays per month, or every Saturday. (*Id.*)

As Human Resources Manager, she normally handles termination (*id.* ¶ 9)

however, because she was out of the office on the day of Plaintiff's alleged misconduct, DeMott, Defendant's Assistant Human Resource Manager, handled the termination (*id.* ¶ 10).

She further states that Defendant does not offer Saturday evening shifts to any employees as the office is closed. (*Id.* ¶ 11.) She adds that Saturday nights are a bad time for a debt collector to work as most people are not home and even if they are home, are not receptive to a phone call from a collector. (*Id.* ¶ 13.)

### D. *Mark A. Garbus Affidavit*

Mark A. Garbus, one of the partners of Defendant, asserts that Defendant "does not and never has had a policy of requiring collectors to work Saturday mornings. Collector's schedules are flexible based on [Defendant] and collector's needs." (Aff. of Mark A. Garbus, dated Aug. 19, 2005, ¶ 8.)

### E. *Defendant's Handbook*

Defendant proffers its "Hourly Employee Handbook" which provides that upon hire, each new employee is placed on a three-month probationary period so that the employee's supervisor can evaluate his or her performance. (Ex. H at 5.) The Handbook explicitly provides that during this time, the employee may be discharged at any time if the supervisor feels that the employee is not "progressing or performing satisfactorily." (*Id.*) It also states that at all times during an employee's employment, the employment may be terminated at will. (*Id.*)

### F. *Plaintiff's Employment Application*

Defendant also submits Plaintiff's employment application which contains some handwritten notations on the top indicating "2 Days" "3 Late Nights" "No Saturdays" "'Religious'" "2 Nights 2 Sat." (Ex. J.) Towards the bottom of the application are additional

-9-

handwritten notations indicating "Hours - 2 Early 3 Late Nite No Saturday." (*Id.*)

## III.     *Plaintiff's EEOC Charge*

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2002. After investigating Plaintiff's claims, the EEOC issued a final determination dated September 2, 2003, concluding that "[t]he evidence fails to indicate that a violation of law occurred." (Affidavit of Amber Kagan, dated Mar. 3, 2005 ("Kagan Aff."), Ex. Y.) Plaintiff was given a Right to Sue Letter.

## DISCUSSION

## I.     *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits,

depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's

-11-

state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

Where, as here, a party is proceeding pro se, the Court is obliged to "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994). This is especially true in the summary judgment context when a pro se plaintiff's claims are subject to a final dismissal. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988).

## II.     *Plaintiff Fails to Raise a Genuine Issue of Fact as to his Discrimination Claim*

Pursuant to Title VII, an employer may not discharge an employee because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). In order to make out a prima facie case of religious discrimination, an employee must show that (1) he held a bona fide religious belief

conflicting with an employment requirement; (2) he informed his employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement. *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). Once an employee establishes a prima facie case, the employer must offer him "a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Id.* (citation and internal quotation marks omitted)

Defendant does not dispute that it was aware of Plaintiff's objection to working on Saturdays. Defendant does contend, however, that Plaintiff cannot prove that he held a bona fide religious belief conflicting with Saturday employment and that he was fired for failing to agree to work on Saturdays. Because the Court finds that Plaintiff has failed to raise a genuine issue of material fact that he was discharged for failing to work on Saturdays, the Court need not, and does not, analyze whether Plaintiff has proffered sufficient evidence as to his alleged bona fide belief.

The heart of Plaintiff's complaint is that Defendant has a policy of requiring collectors to work two Saturdays each month, a policy which allegedly conflicts with Plaintiff's religious practices, and that he was terminated for failing to comply with this policy. Even accepting Plaintiff's version of the facts, however, there is no evidence in the present record from which a reasonable trier of fact could conclude that Plaintiff was fired for this reason.

As an initial matter, it is undisputed that Plaintiff told Campisi that he could not work Saturdays and that she still hired him for the position. Thus, what Plaintiff's claim essentially boils down to is that despite the fact that he advised Campisi that he could not work on Saturdays, and despite the fact that she hired Plaintiff anyway, he was thereafter fired based

on his inability to work on Saturdays. In the Court's view, it is inherently illogical that Defendant would hire Plaintiff knowing that he could not work on Saturdays, only to fire him three weeks later for that very reason. In any event, this series of events certainly undermines Plaintiff's claim that there was a causal connection between his inability to work on Saturdays and his termination.

Moreover, although Plaintiff asserts that both Campisi and Hill advised him that Saturdays were mandatory work days, Plaintiff never contends that he was actually directed or scheduled to appear on a Saturday. In fact, Plaintiff himself testified that once he completed the two-week training, he was never given a work schedule. (*See* Pl.'s Dep. at 58 ("I reported there at 8:00 [a.m.], because that was the only thing that I knew to do, since they didn't tell me any schedule to come in."). Simply put, other than allegations that he was told of Defendant's so-called mandatory Saturday policy, there is no evidence to suggest that Plaintiff was ever told to work on a Saturday and that he refused to do so.

Finally, Defendant has submitted proof that although it prefers that its employees work on Saturdays, it offers flexible schedules to those employees who cannot do so. In this regard, it proffers an employee schedule which demonstrates that out of approximately 90 employees, 14 do not work on Saturdays.

In sum, the Court finds that no reasonable trier of fact could find that Plaintiff was discharged for failing to comply with an alleged mandatory Saturday work policy. Because Plaintiff has failed to establish a prima facie case of religious discrimination, his Title VII claim is therefore dismissed.

**III.** *Plaintiff's New York State Human Rights Law Claims Are Dismissed*

As mentioned previously, Plaintiff also claims that Defendant violated the NYSHRL. This claim too must fail.

Discrimination "claims under the NYSHRL are analyzed identically to claims under . . . Title VII," and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII." *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999). Thus, NYSHRL claims are generally considered "in tandem" with Title VII claims, *see Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999), and a district court need not explicitly evaluate a plaintiff's NYSHRL claims where it has thoroughly analyzed the plaintiff's Title VII claims. *Smith*, 196 F.3d at 363 n.1. In the present case, as Plaintiff has failed to state either a discrimination claim under Title VII, he has ipso facto failed to state these claims under the NYSHRL as well.

## *CONCLUSION*

For all of the above reasons, Defendant's motion for summary judgment is GRANTED as to all of Plaintiff's claims, and this case is accordingly DISMISSED in its entirety. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: September 21, 2006
      Central Islip, New York      /s_____
                                                    Denis R. Hurley,
                                                    United States District Judge